# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

DOROTHY JACKSON                    CIVIL ACTION

VERSUS                              18-603-SDD-RLB

JOHN PIERRE, RAY L. BELTON, ANN A.
SMITH, PATRICK D. MAGEE, CURMAN L. GAINS,
DONALD R. HENRY, LEON R. TARVER, II,
JOHN L. BARTHELEMY, LEROY DAVIS,
DOMOINE RUTHLEDGE, ARMOND DUNCAN,
RANI WHITFIELD, ALFREDA DIAMOND, VIRGINIA
LISTACH, WINSTON DECUIR, JR., AND THE BOARD
OF SUPERVISORS FOR THE SOUTHERN UNIVERSITY
AND AGRICULTURAL AND MECHANICAL COLLEGE

## <u>RULING</u>

This case arises out of the termination of Plaintiff Dorothy Jackson ("Jackson") from her position as a tenured professor at the Southern University Law Center. The matter is before the Court on the following motions:

1) the *Motion to Dismiss*[1] filed by the Board of Supervisors of Southern University and Agricultural and Mechanical College ("the Board") and Board members Domoine Rutledge, Leon R. Tarver, II, Curman L. Gains, Leroy Davis, Donald R. Henry, John L. Barthelemy, Armond Duncan, Rani Whitfield, and Ann A. Smith (collectively, "the Board Members");

2) the *Motion to Dismiss*[2] filed by Defendant, Dr. Ray L. Belton ("Belton"), the President-Chancellor of Southern University and A&M College;

---

[1] Rec. Doc. No. 20. Plaintiff Dorothy Jackson filed an *Opposition* at Rec. Doc. No. 57.
[2] Rec. Doc. No. 22. Jackson filed an *Opposition* at Rec. Doc. No. 56, to which Belton filed a *Reply* at Rec. Doc. No. 76.

52146

3)  the *Motion to Dismiss*[3] filed by Chancellor John Pierre ("Pierre");

4)  the *12(B)(6) Motion to Dismiss*[4] filed by Alfreda Diamond ("Diamond") and Virginia Listach ("Listach");

5)  the *Motion to Dismiss for Failure to State a Claim*[5] filed by Winston DeCuir, Jr. ("DeCuir"); and

6)  the *Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)*[6] filed by Patrick D. Magee ("Magee").

For the reasons that follow, all of Defendants' *Motions* shall be GRANTED.

## I.  FACTUAL BACKGROUND

Until the termination that gave rise to this action, Jackson was a tenured professor at the Southern University Law Center ("SULC") in Baton Rouge, Louisiana.[7] Part of Jackson's role at SULC was to serve as "a managing/supervising attorney at the Southern Elder Law Clinic."[8] After SULC received a grant to provide legal services to the elderly in the community, Jackson began providing "elderly workshops" in the Baton Rouge area, "designed to educate the elderly about options in handling their affairs."[9] Jackson alleges that one such workshop took place on June 29, 2016, at a Council on Aging site on Florida Boulevard in Baton Rouge. That day, Jackson met Helen Plummer ("Plummer"), who,

---

[3] Rec. Doc. No. 36. Jackson filed an *Opposition* at Rec. Doc. No. 58, to which Pierre filed a *Reply* at Rec. Doc. No. 80.
[4] Rec. Doc. No. 37. Jackson filed an *Opposition* at Rec. Doc. No. 77, to which Diamond and Listach filed a *Reply* at Rec. Doc. No. 81.
[5] Rec. Doc. No. 38. Jackson filed an *Opposition* at Rec. Doc. No. 79, to which DeCuir filed a *Reply* at Rec. Doc. No. 91.
[6] Rec. Doc. No. 44. Jackson did not file an opposition to this motion as required by Local Rule 7(f). However, the motion will be granted on the merits for the reasons given herein.
[7] Rec. Doc. No. 1, p. 6.
[8] Rec. Doc. No. 1, p. 8.
[9] Rec. Doc. No. 1, p. 8.
52146

about a week later, had Jackson prepare her will and "indicated that she wanted Professor Jackson to act as attorney for her succession."[10] Jackson complied, designating herself as the attorney for the succession. After Plummer died on March 2, 2017, Plummer's granddaughter, who was not named in the will, withdrew more than $300,000 from Plummer's bank account without authorization. In coordination with the executrix of Plummer's estate, Jackson filed a restraining order and injunction to recover those assets.[11] Jackson alleges that "as a result of the Injunction Petition," someone – possibly Plummer's disinherited granddaughter – "filed a number of complaints against Professor Jackson, including a complaint with the Southern University Law Center"[12] which "alleged that Professor Jackson unduly influenced Ms. Plummer in connection with the drafting and/or execution of her will."[13]

Jackson claims that once the complaints against her began receiving media attention, Defendants "conspired and entered into an agreement to cause the unlawful termination and loss of [her] tenured professorship."[14] Chancellor Pierre sent Jackson a letter on April 20, 2017, informing her that she was being placed on paid administrative leave of absence while a confidential matter was investigated.[15] On August 14, 2017, Chancellor Pierre sent Jackson another letter, stating that "[b]ased on allegations made by the family members of Helen Plummer, the Southern University Law Center has the following charges against . . . Professor Dorothy Jackson: (1) she engaged in conduct

---

[10] Rec. Doc. No. 1, p. 10.
[11] Rec. Doc. No. 1, p. 11.
[12] Rec. Doc. No. 1, p. 12.
[13] *Id.*
[14] Rec. Doc. No. 1, p. 13.
[15] Rec. doc. No. 1, p. 13.

52146

seriously prejudicial to the Southern University Law Center and the Southern University System; (2) she engaged in unethical and/or immoral behavior; (3) she failed to perform duties in a professional manner."[16] A hearing before the investigatory committee was set for November 17, 2017.[17] After the hearing, the committee allegedly recommended a "one year suspension without pay, revocation of tenure, and a demotion."[18] But, Jackson alleges, Chancellor Pierre "overruled the investigatory committee [and] recommended termination."[19] Jackson appealed the termination to the Personnel Committee of Southern's Board. Her appeal was denied.[20]

Jackson filed this lawsuit on June 5, 2018, bringing the following claims against Defendants: (1) violation of due process pursuant to 42 U.S.C. § 1983; (2) conspiracy to violate Jackson's right to due process, pursuant to 42 U.S.C. § 1985 and § 1986; (3) intentional infliction of emotional distress under state law; (4) violation of state law due process pursuant to the Louisiana Constitution; (5) abuse of rights; and (6) state law conspiracy. Jackson prays for reinstatement of her tenured professorship, declaratory and injunctive relief, and compensatory and punitive damages.[21]

Defendants urge these motions to dismiss, arguing that all of the claims against them should be dismissed pursuant to Rule *12(b)(6)* because Jackson has failed to state a claim. Jackson disagrees, arguing that her Complaint clearly states a claim that her constitutional rights were violated. The arguments advanced by Defendants in their

---

[16] Rec. Doc. No. 1, p. 17.
[17] Rec. Doc. No. 1, p. 22.
[18] Rec. Doc. No. 1, p. 25.
[19] Rec. Doc. No. 1, p. 25.
[20] Rec. Doc. No. 1, p. 32.
[21] Rec. Doc. No. 1, p. 47.
52146

respective motions overlap entirely and are substantively similar, if not identical. The Court will address the arguments in turn.

## II.    LAW AND ANALYSIS

### A. Jackson's Federal Claims

1. <u>Individual Capacity Claims</u>

In her *Complaint*, Jackson specifies that all of the so-called "Individual Defendants" – namely, John Pierre, Ray L. Belton, Ann A. Smith, Patrick D. Magee, Curman L. Gains, Donald R. Henry, Leon R. Tarver, II, John L. Barthelemy, Leroy Davis, Domoine Rutledge, Armond Duncan, Rani Whitfield, Alfreda Diamond, Virginia Listach, and Winston DeCuir, Jr. – are sued in their individual capacities.[22] Though the Individual Defendants have filed separate *Motions to Dismiss*, either individually or in small groups, all of those motions advance the argument that Jackson has failed to state a claim with respect to her 42 U.S.C. § 1983 claims. The Court will address Jackson's § 1983 claims in turn.

*a. Procedural Due Process – 42 U.S.C. § 1983*

Defendants contend that all of Jackson's 42 U.S.C. § 1983 claims should be dismissed because she "has failed to plead any deprivation of her constitutional rights."[23] With respect to procedural due process specifically, Defendants maintain that Jackson "was provided with more than adequate protections of notice and an opportunity to be heard prior to her termination."[24] On the contrary, argues Jackson, her *Complaint* "clearly establishes a violation"[25] of her right to due process.

---

[22] Rec. Doc. No. 1, p. 1. The only exception to individual capacity is the Board itself, which is made defendant in its official capacity (See *infra*, p. 20).
[23] Rec. Doc. No. 35, p. 7.
[24] Rec. Doc. No. 35, p. 9.
[25] Rec. Doc. No. 57, p. 9.
52146

Jackson's 42 U.S.C. § 1983 claim hinges on her allegation that Defendants engaged in "the taking of her property without due process of law."[26] Indeed, the Fourteenth Amendment to the United States Constitution provides that "No State shall . . . deprive any person of life, liberty, or property, without due process of law."[27] It is well settled that "due process" is not a fixed concept; instead, it is "flexible and calls for such procedural protections as the particular situation demands."[28] A court's inquiry into what process is due in a given situation requires an analysis of the "interests at stake in a given case."[29]

Thus, to know whether Jackson has plausibly alleged a violation of her constitutional right to procedural due process, this Court is bound to assess the interests at stake in Jackson's case and determine what process, exactly, she was due. The Fifth Circuit has examined the issue of procedural due process protections in the context of employment actions involving tenured public university professors and concluded that a professor is entitled to:

> (1) be advised of the cause for his termination in sufficient detail so as to enable him to show any error that may exist; (2) be advised of the names and the nature of the testimony of the witnesses against him; (3) a meaningful opportunity to be heard in his own defense within a reasonable time; and (4) a hearing before a tribunal that possesses some academic expertise and an apparent impartiality toward the charges.[30]

In this case, Jackson's own allegations demonstrate that some process was, in fact, provided to her. The question before the Court is whether Jackson has stated a plausible

---

[26] Rec. Doc. No. 1, p. 33.
[27] U.S. Const. amend. XIV.
[28] *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).
[29] *Babin v. Breaux*, 587 Fed. Appx. 105, 110 (5th Cir. 2014)(citing *Mathews v. Eldrige*, 424 U.S. 319, 334-35 (1976)).
[30] *Levitt v. Univ. of Texas at El Paso*, 759 F.2d 1224, 1228 (5th Cir. 1985).
52146

claim that the process she received did not comport with constitutional standards due process.

As to the first two prongs of procedural due process in the tenured professor context, requiring that Jackson be advised of the cause of her termination in "sufficient detail" and be apprised of the names and nature of the testimony of any witnesses against her, her *Complaint* contains allegations that she was provided with the following:

- "a letter from Defendant Pierre . . . indicating that she had been placed on paid administrative leave of absence while a confidential matter was investigated . . . the investigation would be concluded by August 15, 2017";[31]

- "a copy of a 21 page excerpt from the Report"[32] that resulted from the investigation;

- a meeting with Chancellor Pierre "to discuss the investigation";[33]

- a letter from Chancellor Pierre stating that, "[b]ased on allegations made by the family members of Helen Plummer, the Southern University Law Center has the following charges against . . . Professor Dorothy Jackson: (1) she engaged in conduct seriously prejudicial to the Southern University Law Center and the Southern University System; (2) she engaged in unethical and/or immoral behavior; (3) she failed to perform duties in a professional manner."[34]

- A copy of the full report from SULC's investigation, after the 19th Judicial District Court allegedly ordered that it be disclosed to Jackson in August 2017;[35]

- A memorandum from the investigatory committee dated September 19, 2017

---

[31] Rec. Doc. No. 1, p. 13, ¶ 38.
[32] *Id.* at p. 16, ¶ 49.
[33] *Id.* at ¶ 50.
[34] Id. at p. 17, ¶ 55.
[35] Id. at p. 19, ¶ 58-60.
52146

"which addressed the charges levied against Professor Jackson";[36]

- A teleconference with Board Attorney Winston DeCuir before Jackson's hearing in which DeCuir "purportedly provided Professor Jackson with specifics as to the charges."[37]

Jackson contends that these communications were insufficient to provide due process for several reasons. First, she alleges that the above-listed communications "were not meaningful, but rather were just a sham."[38] In fact, she alleges, the communications were deliberately vague because "part of the conspiracy was to mislead her as to what she was actually alleged as having done wrong."[39] When Jackson found the provided notice insufficient, she allegedly made "numerous requests for a copy of 'the allegations made by the family members of Helen Plummer'"[40] and "numerous requests for more specific charges,"[41] but SULC refused to honor them. Jackson also alleges that at the November 17, 2017 termination hearing, "accusations of violations of computer input policies and outside employment policies were presented into evidence, even though these accusations were never made to Professor Jackson at prior discussions with Defendant Pierre, or put in the charges against her."[42]

For their part, Defendants contend that the notice provided to Jackson was more than sufficient under relevant Fifth Circuit precedent. Specifically, Defendants cite

---

[36] Id. at p. 20, ¶ 64.
[37] *Id.* at p. 22, ¶ 72.
[38] Rec. Doc. No. 58, p. 6.
[39] Rec. Doc. No. 58, p. 7.
[40] Rec. Doc. No. 1, p. 18.
[41] *Id.*
[42] Rec. Doc. No. 58, p. 7.
52146

*Pastorek v. Trail*,[43] wherein the Fifth Circuit considered whether the Louisiana State University Medical School violated the procedural due process rights of a tenured professor when it terminated him. The plaintiff, a tenured professor and obstetrician-gynecologist, argued that, although the Medical School had provided him with notice, it did not "give him notice of the 'actual reasons' for his termination."[44] Therefore, he said, "he did not have an opportunity to respond to 'the reasons which actually motivated [the Board]' to terminate him."[45] The Fifth Circuit rejected the plaintiff's argument, reasoning:

> Prior to terminating appellant, [the chancellor] sent a letter informing him of the decision to institute termination proceedings. The letter informed appellant of the charges and requested a written response. These facts are not disputed. This procedure gave appellant notice of the charges and an opportunity to tell "his side of the story." Therefore, Appellant received the notice and opportunity to be heard that due process requires.[46]

The Fifth Circuit found a single letter to be sufficient notice in *Pastorek*, even over the plaintiff's contention that the letter did not reflect the "actual charges" against him. If a single letter is sufficient notice of termination proceedings to a tenured professor, then, arguing *a fortiori*, the seven different forms of notice that Jackson alleges she received over a period of months are also sufficient.

Additionally, the Court takes note of another Fifth Circuit case, *Wells v. Dallas Independent School District*.[47] There, considering the sufficiency of notice of termination provided to an assistant superintendent of schools, the Fifth Circuit specifically held that two provisions of the provided notice were acceptably specific "allegations of misdeeds

---

[43] 248 F.3d 1140 (5th Cir. 2001).
[44] *Id.* at *4.
[45] *Id.*
[46] *Id.*
[47] 793 F.2d 679 (5th Cir. 1986).
52146

in specific circumstances [that allowed the plaintiff] to prepare his defense."[48] Those provisions read as follows:

> At the hearing the Administration will present evidence with regard to the following matters and charges forming the basis of your termination . . .
>
> 2.      Insubordination and disobedience in participating in the execution of a management contract with the Foundation for Quality Education in direct opposition and defiance of orders of the General Superintendent.
>
> 3.      Negligence and mismanagement by you in your agreement to terms and conditions and execution of documents related to a pledge of retainage by Maxwell Construction Company to the Merchant's State Bank.[49]

These provisions are highly analogous to the written notice that was provided to Professor Jackson in this case. By her own allegation, the notice that Jackson received indicated that the allegations against her were "[b]ased on allegations made by the family members of Helen Plummer,"[50] which, like the Fifth Circuit-approved provisions above, provided a general context or point of reference for the alleged misconduct. Jackson's notice also stated that she was charged with failure to perform duties in a professional manner, unethical and/or immoral behavior, and conduct seriously prejudicial to the Southern University Law Center.[51] Those charges are no more or less specific than the charges of negligence, mismanagement, insubordination, and disobedience that the Fifth Circuit found sufficient in *Wells.*

In light of the above-reviewed Fifth Circuit precedent addressing what constitutes "sufficient detail" in the context of the charges before terminating tenured professors, the Court concludes that Professor Jackson has failed to state a plausible claim that the first

---

[48] Id. at 683.
[49] Id. at 682.
[50] Rec. Doc. No. 1, p. 17
[51] *Id.*
52146

two prongs of the relevant procedural due process analysis were not met by Defendants. Although she does allege that certain charges were levied against her at the hearing that had not been included in the notice, Jackson does not allege that those charges fell outside the scope of what the notice *did* say – namely, that she would have a hearing to address her conduct in connection with the Helen Plummer succession.

Jackson was given two opportunities to be heard on the charges against her: first, at a November 2017 hearing before a faculty investigative committee, and then at her appeal to the Board in January 2018.[52] It is well-settled that "[t]he core requirement of procedural due process is the opportunity to be heard at a meaningful time and in a meaningful manner."[53] Specifically, the procedural due process requirements for tenured professors enumerated by the Fifth Circuit include ". . . (3) a meaningful opportunity to be heard in [her] own defense within a reasonable time; and (4) a hearing before a tribunal that possesses some academic expertise and an apparent impartiality toward the charges."[54]

Despite receiving two hearings, Jackson alleges that her opportunity to be heard was not meaningful because Defendants presented charges against her at the November 2017 hearing relating to outside employment and computer use policies that were not previously mentioned in the written notice or in any other form of pre-hearing communication.  Yet, Jackson also alleges that, at the hearing, she:

> proved through testimony that (1) no law professor was aware of any outside employment policy; (2) no law professor had ever sought permission to perform outside employment per the purported policy; and (3)

---

[52] Rec. Doc. No. 1, p. 71-74, 115-124.
[53] *Houston Fed'n of Teachers, Local 2415 v. Houston Indep. Sch. Dist.,* 251 F. Supp. 3d 1168, 1175 (S.D. Tex. 2017)(citing *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)).
[54] *Levitt v. Univ. of Texas at El Paso,* 759 F.2d 1224, 1228 (5th Cir. 1985).
52146

Professor Jackson did not have privileges to input information into the Law Clinic Computer System as claimed by Defendants.[55]

In other words, accepting Jackson's allegations as true, she was able to present testimony at the hearing in order to rebut the charges against her related to the alleged violations of the University's outside employment and computer use policies. Therefore, Jackson does not state a claim that she lacked a "meaningful" opportunity to be heard, because her own allegations demonstrate that she was, in fact, heard, and, in her own estimation, "proved" what she set out to prove. It is somewhat puzzling for Jackson to argue that she was unable to meaningfully respond to the charges against her due to some perceived deficiency in the notice that she received, while simultaneously pleading that she presented testimony that effectively rebutted those charges.

Related to her entitlement to an impartial panel with some academic expertise, Jackson makes several allegations concerning the makeup of the faculty committee that oversaw her termination proceedings. Specifically, Jackson alleges that the investigatory committee was biased because Defendant DeCuir "impermissibly served as prosecutor of the charges brought against [her] while at the same time acting as legal advisor to Defendant, the Board, and the faculty committee."[56] However, the Fifth Circuit has held that such a claim requires an allegation of "actual bias,"[57] not merely an implied structural conflict of interest that arises because the members of the committee are employed by the university, and those employees serve on the committee that oversees the plaintiff's termination. To demonstrate impartiality, "[t]he record must support actual partiality of the

---

[55] Rec. Doc. No. 1, p. 24, ¶ 82.
[56] Rec. Doc. No. 1, p. 34.
[57] *Levitt v. Univ. of Texas at El Paso*, 759 F.2d 1224, 1228 (5th Cir. 1985)
52146

body or its individual members."[58] Here, at the motion to dismiss stage, the Court considers not the content of the record but the allegations in the *Complaint*. Jackson has failed to plead any facts that could support a finding that DeCuir was biased against her, by virtue of his role as counsel for SULC or for any other reason.

Further, with respect to the Fifth Circuit's instruction that the panel members must have "some academic expertise," Jackson avers that "a majority of the members of the faculty committee that sat in judgment of [her] had little or no legal experience dealing with Wills and Successions. . ."[59] In *Jones v. Louisiana Bd. of Sup'rs of Univ. of Louisiana Sys.,*[60] the Fifth Circuit held that a tenured economics professor's due process right to a panel with "some academic expertise" was satisfied when the panel in question was "a committee comprising seven faculty members, including one faculty member from the College of Business."[61] Jackson's allegations on the composition of the panel are relatively bare bones and conclusory; she does not plead facts that set forth the composition of the committee that presided over the November 2017 investigatory hearing in detail. At several places in her *Complaint*, Jackson does indicate that the committee had seven members.[62] Defendants Alfreda Diamond and Virginia Listach are both alleged to have participated in the investigation;[63] reading between the lines and assuming that they were on the investigatory committee, the Court notes that both Diamond and Listach were both law professors at SULC and, as such, surely comport

---

[58] 541 F.2d at 1079.
[59] Rec. Doc. 1, p. 34.
[60] 809 F.3d 231 (5th Cir. 2015).
[61] *Id.* at 235.
[62] Rec. Doc. No. 1, p. 34.
[63] Rec. Doc. No. 1, p. 14, ¶ 42.
52146

with the "some academic expertise" standard articulated by the Fifth Circuit. In fact, Jackson herself describes Listach as her "supervisor."[64] Even if Diamond and Listach were the only two law professors on the panel, a committee where two out of seven members are law professors with legal expertise exceeds the one out of seven standard that the Fifth Circuit upheld in *Jones*, as discussed above.

Paragraphs 83 through 124 of Jackson's *Complaint* contain allegations that, in the process of terminating her, Defendants violated various policies of the University and the Law Center.[65] The Fifth Circuit has firmly rejected the notion that a university's violations of its own procedural rules give rise to a constitutional due process violation. In *Levitt*, the Fifth Circuit held that

> There is not a violation of due process every time a university or other government entity violates its own rules. Such action may constitute a breach of contract or a violation of state law, but unless the conduct trespasses on federal constitutional safeguards, there is no constitutional deprivation.[66]

Jackson cannot assert a due process violation based on violations of internal SULC policies where she fails to state a claim that the process she received was *constitutionally* deficient. Overall, for the foregoing reasons, the Court finds that Jackson has failed to state a plausible claim that she suffered a procedural due process violation at the hands of the Defendants.

---

[64] Rec. Doc. No. 1, p. 8.
[65] Rec. Doc. No. 1, ¶ 83 – 124.
[66] Levitt at 1230.
52146

*b. Substantive Due Process – 42 U.S.C. § 1983*

The substantive component of due process bars certain arbitrary government actions, "even if their implementation is fair."[67] "In the case of the specific acts of Defendants, 'only the most egregious official conduct' is arbitrary in the constitutional sense."[68] "A public employer's decision to terminate a tenured employee's property interest in continued employment is arbitrary or capricious if the decision 'so lacked a basis in fact' that it may be said to have been made 'without professional judgment.'"[69] The terminated employee "must show that the decision was 'made without a rational connection between the known facts and the decision or between the found facts and the evidence.'"[70] Overall, "[t]he federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies . . . The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions."[71]

Defendants argue that Jackson has failed to allege a substantive due process violation in connection with her suspension and termination, noting the "absence of any allegation that there was no factual basis to conclude the charges against Jackson were meritorious."[72] In fact, Defendants argue, "[a]ccepting Plaintiff's allegations as true, she herself has supplied numerous justifications in her *Complaint* for her suspension and

---

[67] *Id.* (quoting *Dismukes v. Hackathorn*, 802 F.Supp. 1442, 1447 (N.D.Miss.1992) (citations omitted)).
[68] *Hess*, 149 F.Supp.3d at 1043 (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845–46, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)).
[69] *Mills v. Garcia*, 650 F. App'x 873, 878 (5th Cir. 2016)(citing *Texas v. Walker*, 142 F.3d 813, 819 (5th Cir. 1998)).
[70] *Id.* (citing *Lewis v. Univ. of Tex. Med. Branch*, 665 F.3d 625, 631 (5th Cir. 2011)).
[71] Bishop v. Wood, 426 U.S. 341, 349, 96 S. Ct. 2074, 2080, 48 L. Ed. 2d 684 (1976).
[72] Rec. Doc. No. 22-1, p. 11.
52146

termination,"[73] including "the fact that she designated herself succession attorney and obtained Plummer as a private client through the Law Clinic;" the fact that Plummer's family lodged a complaint against her, accusing her of undue influence; and the fact that the Plummer controversy "brought significant and negative media attention to herself, the Law Center, and Law Clinic."[74]

Jackson rejects Defendants' contention that she has failed to state a substantive due process claim, suggesting that their argument fails to take into account that this action involves a "conspiracy to terminate a tenured professorship and ruin the plaintiff's professional and personal lives."[75] She devotes multiple pages of briefing to the argument that she had a property interest in her continuing employment and that she was entitled to due process with respect to her suspension and termination. As far as the Court can discern, none of the parties dispute that due process applies to Jackson's claims. What Jackson fails to do is to plausibly allege that her suspension and termination "so lacked a basis in fact" that it was arguably carried out "without professional judgment."[76] On the contrary, as Defendants argue, her *Complaint* is rife with allegations that, accepted as true as is required at the motion to dismiss stage, supply ample factual basis for the actions of Defendants. Accordingly, the Court finds that Jackson has failed to state a claim that her substantive due process rights were violated, and her 42 U.S.C. § 1983 claim shall be dismissed with prejudice. The Court finds that dismissal with prejudice is warranted because granting leave to amend the complaint would be futile and

---

[73] Rec. Doc. No. 35, p. 11.
[74] *Id.* at p. 12.
[75] Rec. Doc. No. 56, p. 4.
[76] *Mills v. Garcia*, 650 F. App'x 873, 878 (5th Cir. 2016)(citing *Texas v. Walker*, 142 F.3d 813, 819 (5th Cir. 1998)).
52146

inappropriate under the circumstances. This is not a case of the absence or deficiency of allegations which an opportunity to amend might cure. To the contrary, Jackson's own allegations formed the basis for the Court's conclusion that she received constitutionally sufficient process in the course of her suspension and termination. Amending her complaint to *remove* allegations would surely be in bad faith, and pleading *more* facts would not change this Court's conclusion that Jackson failed to state a plausible claim that her constitutional rights were violated. Accordingly, her 42 U.S.C. § 1983 claims shall be dismissed with prejudice.

### c. Jackson's 42 U.S.C. § 1985 and § 1986 Claims

Jackson alleges that Defendants conspired against her to quiet the negative media attention on SULC that arose out of the Helen Plummer controversy, and that this conspiracy ultimately resulted in her termination. The conspiracy allegedly included filing false or misleading reports to Southern about Jackson's behavior in the Law Clinic, withholding or providing partial and misleading information to Jackson about the charges against her, and violating Southern's own internal policies and procedures when terminating her. Jackson alleges a conspiracy pursuant to 42 U.S.C. § 1985, and also claims that Defendants are liable for failing to prevent said conspiracy under 42 U.S.C. § 1986.

Congress passed what is now known as 42 U.S.C §1985 as part of the Civil Rights Act of 1871.[77]  Its primary purpose was to "combat the prevalent animus against [African Americans] and their supporters."[78] Section 1985(1) provides a remedy for a conspiracy

---

[77] *United Bhd. of Carpenters & Joiners of Am., Local 610 v. Scott*, 463 U.S. 825, at 837 (1983).
[78] *Id.* at 836.
52146

by two or more persons to "interrupt, hinder, or impede . . . the discharge of [a United States officer's] official duties."[79] Section 1985(2) applies to a conspiracy by two or more persons to obstruct justice in a federal court.[80] Finally, § 1985(3)—which is applicable to this case—provides a cause of action for a conspiracy by two or more persons to deprive one of "equal protection of the laws, or of equal privileges and immunities under the laws."[81] In order for a § 1985(3) claim to succeed, the plaintiff must prove the following elements:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.[82]

Defendants state correctly that "a federal conspiracy claim is not actionable without an underlying § 1983 violation,"[83] and assert that, because Jackson has not stated a claim under § 1983, her conspiracy claim necessarily fails. The Court agrees. It is well-settled that § 1985 claims cannot stand on their own; an underlying § 1983 claim is required.[84] Because the Court, *supra*, dismissed Jackson's § 1983 claims for failure to state a claim, her § 1985 claim must also be dismissed.

Defendants further assert that, even if the § 1983 claim stands, the § 1985 conspiracy claim still fails because Jackson failed to allege any class-based or race-

---

[79] 42 U.S.C. § 1985.
[80] *Id.*
[81] 42 U.S.C.A § 1985.
[82] *United*, 463 U.S. at 828–29 (1983) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971)).
[83] *Id.* at p. 15.
[84] In the Fifth Circuit, see, *e.g.*, *Pastorek v. Trail*, 248 F.3d 1140 (5th Cir. 2001)("A section 1983 plaintiff may assert conspiracy claims, but such a claim is not actionable without an underlying violation of section 1983.")(referencing *Pfannstiel v. City of Marion,* 918 F.2d 1178, 1187 (5th Cir.1990)).
52146

based discriminatory animus.[85] Jackson argues that the cases cited by Defendants are not persuasive because they do not *explain* the animus requirement, nor do they discuss "other bases on which a § 1985 conspiracy claim can be stated."[86] However, Jackson herself cites *United Bhd. of Carpenters & Joiners of Am., Local 610 v. Scott*, where the United States Supreme Court set forth that a § 1985 claim for depriving a person of their "equal protection" or "equal privileges and immunities"[87] must also show "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."[88] Thus, even if Jackson had successfully stated a claim under § 1983, her § 1985 claim does not survive because she does not allege that the conspiracy against her was motivated by race- or class-based animus.

Further, 42 U.S.C. § 1986 provides a remedy for harm caused by persons who had knowledge of and power to prevent a § 1985 conspiracy but neglected or refused to prevent it. The Fifth Circuit previously held that a § 1986 claim is "interrelated" and "dependent" on a § 1985 claim that shares the same cause of action.[89] Because Jackson's § 1985 claim fails, so too must her § 1986 claim.[90] Like dominoes, Jackson's failure to state a claim under § 1983 is fatal to her § 1985 claim, which in turn undermines her § 1986 claim. Accordingly, all of Jackson's conspiracy claims under §1985 and § 1986 shall be dismissed with prejudice.[91] Amendment would be futile in light of the Court's

---

[85] Rec. Doc. 35, p. 15.
[86] Rec. Doc. 57, p. 18.
[87] 42 U.S.C.A. § 1985.
[88] *United*, 463 U.S. at 834 (quoting *Griffin*, 403 U.S. at 102).
[89] *Dowsey v. Wilkins*, 467 F.2d 1022, 1026 (5th Cir. 1972).
[90] *See Kaylor v. Fields*, 661 F.2d 1177, 1184 (8th Cir. 1981) (A cause of action under § 1986 is dependent on a valid claim under § 1985).
[91] The Court does not reach the issue of Defendants' asserted defense of qualified immunity, because none of the federal claims survive the motions to dismiss.
52146

dismissal of Jackson's §1983 claims.

    2.  <u>Official Capacity Claims</u>

Jackson's *Complaint* specifies that the named defendants are all sued in their individual capacities.[92] But, also made defendant is the Board of Supervisors for the Southern University Agricultural and Mechanical College, with no clear specification made as to capacity. The Board and the Board Members, in their *Memorandum* supporting their *Motion to Dismiss*,[93] argue that any official capacity claims for monetary damages against the Board "must be dismissed because both the Board and Board Members enjoy sovereign immunity under the Eleventh Amendment."[94] However, in her *Opposition*, Jackson states that she "has not asserted any claims against the Board Members in their official capacities."[95] Therefore, the issue is moot with respect to the Board Members.

Jackson clarifies that her claims against the Board itself, however, *are* official capacity claims. Those claims are not barred by sovereign immunity, she argues, because she seeks only prospective injunctive relief, which falls within the *Ex Parte Young* exception to Eleventh Amendment Immunity.[96] Indeed, the United States Supreme Court has often "found federal jurisdiction over a suit against a state official when that suit seeks only prospective injunctive relief in order to 'end a continuing violation of federal law.'"[97] That is precisely what Plaintiff claims to be seeking; she cites *Nelson v. Univ. of Tex. At Dallas*[98] for the proposition that "a request for reinstatement" fits squarely within

---

[92] Rec. Doc. No. 1, p. 1.
[93] Rec. Doc. No. 35.
[94] Rec. Doc. No. 35, p. 6.
[95] Rec. Doc. No. 57, p. 7.
[96] Rec. Doc. No. 57, p. 7.
[97] *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 73, 116 S. Ct. 1114, 1132, 134 L. Ed. 2d 252 (1996)(citing *Green v. Mansour*, 474 U.S., at 68, 106 S.Ct., at 426).
[98] 535 F.3d 318, 324 (5th Cir. 2008).
52146

the *Ex Parte Young* exception. Overall, the Court finds that Jackson's argument has merit and that this Court has jurisdiction over her official-capacity claims against the Board – not the individual Board Members. Nevertheless, Jackson's official-capacity claims against the Board will be dismissed with prejudice in light of the Court's finding, *supra*, that Jackson failed to state a plausible claim that she suffered a constitutional violation redressable under § 1983.

### B.  State Law Claims

28 U.S.C. § 1367(c)(3) states that the district court may decline to exercise supplemental jurisdiction over a claim under § 1367(a) if it "has dismissed all claims over which it has original jurisdiction." Generally, a federal court should decline to exercise jurisdiction over supplemental state law claims when all federal claims are disposed of prior to trial.[99] A federal court should consider and weigh in each case and at every stage of the litigation the principles of judicial economy, convenience, fairness and comity in order to decide whether to exercise supplemental jurisdiction.[100]  Furthermore, in deciding whether to decline to exercise jurisdiction over the state law claims, the Court considers several factors, including the circumstances of the particular case, the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims.[101]  When the balance of factors indicates that a case properly belongs in state court, the federal court should decline the exercise of jurisdiction.[102]

---

[99] *Carnegie–Mellon*, 484 U.S. 343, 350 (1988).
[100] *Id.*
[101] *City of Chicago v. International College of Surgeons*, 522 U.S. 156, 173 (1997).
[102] *Carnegie–Mellon*, 484 U.S. at 350 (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)(emphasis added).

52146

The Court has considered the factors presented above and finds that the state law claims asserted in this matter properly belong in state court. The dismissal of all of Jackson's federal claims gives rise to the situation contemplated by 28 U.S.C. § 1367(c)(3), where the district court may decline to exercise supplemental jurisdiction when the claims over which it had original jurisdiction have been dismissed. Accordingly, the Court declines to exercise supplemental jurisdiction over the remaining state law claims. All state law claims asserted in this matter are hereby dismissed without prejudice.

## III.    CONCLUSION

For the above reasons, the following *Motions* shall be GRANTED:

- the *Motion to Dismiss*[103] filed by the Board of Supervisors of Southern University and Agricultural and Mechanical College ("the Board") and Board members Domoine Rutledge, Leon R. Tarver, II, Curman L. Gains, Leroy Davis, Donald R. Henry, John L. Barthelemy, Armond Duncan, Rani Whitfield, and Ann A. Smith (collectively, "the Board Members");

- the *Motion to Dismiss*[104] filed by Defendant, Dr. Ray L. Belton ("Belton"), the President-Chancellor of Southern University and A&M College;

- the *Motion to Dismiss*[105] filed by Chancellor John Pierre ("Pierre");

- the *12(B)(6) Motion to Dismiss*[106] filed by Alfreda Diamond ("Diamond") and Virginia Listach ("Listach");

- the *Motion to Dismiss for Failure to State a Claim*[107] filed by Winston DeCuir, Jr. ("DeCuir"); and

---

[103] Rec. Doc. No. 20.
[104] Rec. Doc. No. 22.
[105] Rec. Doc. No. 36.
[106] Rec. Doc. No. 37.
[107] Rec. Doc. No. 38.

52146

- the *Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)*[108] filed by Patrick D. Magee ("Magee").

All of Jackson's federal claims against Defendants are hereby dismissed with prejudice.

Jackson's state law claims are dismissed without prejudice.

Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>September 27, 2019</u>.


_____

**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[108] Rec. Doc. No. 44.
52146